# United States Court of Appeals for the Federal Circuit

---

## IN RE RAYMOND GIANNELLI

---

### 2013-1167

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Serial No. 10/378,261.

---

Decided: January 13, 2014

---

MICHAEL LAWRENCE OLIVERIO, Novak, Druce, Connolly, Bove & Quigg, LLP, of Boston, Massachusetts, argued for appellant.

JEREMIAH S. HELM, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were NATHAN K. KELLEY, Deputy Solicitor, and AMY J. NELSON, Associate Solicitor.

---

Before RADER, *Chief Judge,* LOURIE and MOORE, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Raymond Giannelli ("Giannelli") appeals from the decision of the United States Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("the

Board") affirming the rejection of claims 1–25 of U.S. Patent Application 10/378,261 (Mar. 3, 2003) (the "'261 application") under 35 U.S.C. § 103(a)[1] as obvious over U.S. Patent 5,997,447 (the "'447 patent"). *Ex Parte Giannelli*, No. 2010-007582, slip op. at 5 (P.T.A.B. Oct. 29, 2012) ("Board Decision"). Because the Board erred in concluding that the claims of the '261 application would have been obvious in view of the '447 patent, we reverse.

BACKGROUND

Giannelli filed the '261 application, entitled "Rowing Machine," in March 2003. The '261 application discloses an exercise machine on which a user can perform a rowing motion against a selected resistance, thereby strengthening the back muscles. '261 application, at 2–3.

Claim 1, as amended, is representative of the claims on appeal and reads as follows:

> 1. A row exercise machine comprising an input assembly including a first handle portion adapted to be moved from a first position to a second position by a pulling force exerted by a user on the first handle portion in a rowing motion, the input as-

---

[1]    At the time, the statute provided that:

(a) A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill . . . .

35 U.S.C. § 103(a) (2006). This provision has since been amended. *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287–88 (2011). However, because the '261 application was filed before March 16, 2013, the pre-AIA § 103(a) applies. *See* AIA, 125 Stat. at 293.

sembly defining a substantially linear path for the first handle portion from the first position to the second position.

Response to Office Action, No. 10/378,261, at 2 (Apr. 12, 2006).

The specification teaches that the rowing machine's arms travel in a substantially linear path as the handles are pulled. '261 application, at 3–4. An exemplary method of operation described in the specification depicts the user as pulling the machine's handles to overcome a selected resistance. *Id.* at 9. Figure 4 of the '261 application, reproduced below, shows a left side view of an embodiment of the row exercise machine.



'261 application, fig. 4.

The PTO examiner initially rejected all the original claims of the '261 application, finding the claims anticipated by the '447 patent.

The '447 patent, entitled "Chest Press Apparatus for Exercising Regions of the Upper Body," describes a chest press exercise machine where the user performs the exercise by pushing on the handles to overcome the selected resistance. '447 patent col. 11 ll. 39–50. Figure 1 of the '447 patent, reproduced below, depicts an angled view of the chest press apparatus.



'447 patent fig. 1.

In response to the rejection, Giannelli amended the claims to add the limitation "by a pulling force exerted by a user on the first handle portion in a rowing motion," but the examiner again rejected the '261 application under 35 U.S.C. § 102(b) and 103(a) in view of the '447 patent. The rejection was made final.

Giannelli appealed the examiner's rejection to the Board. The Board affirmed the obviousness rejection and did not address the anticipation rejection. Board Decision at 5. The Board characterized the dispositive issue as being whether the chest press machine of the '447 patent was "capable of being used by exerting a pulling force on the handles in a rowing motion." *Id.* at 3. The Board deemed it reasonable that a user could face the handles of the prior art chest press machine and exert a pulling force on its handles in a rowing motion. *Id.* The Board noted that the recitation of a new intended use for an old product did not make a claim to that old product patentable, and consequently determined that the '261 application simply recited the new intended use of rowing for the '447 patent chest press apparatus. *Id.* at 3–4. The Board further found that even though using the '447 patent's invention as a rowing machine "may not fully achieve the 'purpose' of [the '447] apparatus," Giannelli had not shown that the apparatus could not be used in such a manner. *Id.* at 4. In the Board's view, Giannelli thus failed to rebut the Board's showing of capability of pulling the handles. *Id.* The Board also found that the '261 application's claimed "substantially linear path" encompassed the "slightly curvilinear path" disclosed in the '447 patent Abstract. *Id.* at 5.

Giannelli appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

### DISCUSSION

We review the Board's legal conclusions *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings underlying those determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Obviousness is a ques-

tion of law, based on underlying factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966); *Elsner*, 381 F.3d at 1127. A claim is invalid for obviousness if, to one of ordinary skill in the pertinent art, "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made . . . ." 35 U.S.C. § 103(a) (2006); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007).

Giannelli argues that the Board's decision sustaining the examiner's rejection is based on an incorrect assertion that the chest press machine disclosed in the '447 patent could be used as a rowing machine rather than considering how it would be used. Giannelli contends that the Board erred in concluding that the examiner had met the burden of establishing a case of prima facie obviousness over the cited '447 reference because he failed to explain how or why a user could possibly use the prior art chest press machine to perform a rowing motion. The Director responds that claim 1 only requires an exercise machine with handles that *can* be pulled. The Director contends that the Board correctly found that the chest press machine described in the '447 patent either disclosed or rendered obvious all of the limitations of the '261 application claims. The Director further contends that the Board correctly held that Giannelli did not rebut the finding of capability because he did not provide any persuasive argument or evidence to show that the chest press machine described in the '447 patent could not be used to perform the rowing exercise.

The Board did not review and decide the anticipation issue, so neither will we. Thus, it is obviousness that is before us, and we conclude that the Board erred in concluding that the claims of the '261 application would have been obvious in view of the '447 patent. The Board premised its conclusion on its theory that the machine de-

scribed in the '447 patent was "capable of" having its handles pulled.

The PTO bears the initial burden of showing a prima facie case of obviousness. *In re Sullivan*, 498 F.3d 1345, 1351 (Fed. Cir. 2007). When a prima facie case of obviousness is made, the burden then shifts to the applicant to come forward with evidence and/or argument supporting patentability. *In re Glaug*, 283 F.3d 1335, 1338 (Fed. Cir. 2002). The PTO did not carry its burden in this case.

The claims of the '261 application specifically require a "first handle portion adapted to be moved from a first position to a second position by a pulling force . . . in a rowing motion." Response to Office Action, No. 10/378,261, at 2 (Apr. 12, 2006). We have noted that, "the phrase 'adapted to' is frequently used to mean 'made to,' 'designed to,' or 'configured to,' . . ." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012). Although the phrase can also mean "'capable of' or 'suitable for,'" *id.*, here the written description makes clear that "adapted to," as used in the '261 application, has a narrower meaning, *viz.*, that the claimed machine is designed or constructed to be used as a rowing machine whereby a pulling force is exerted on the handles.

The written description of the '261 application describes how the position of the handles relative to the primary and secondary lever arms and the resistance mechanism renders them "adapted" to be moved by the user's pulling force. For example, the application states that the exercise machine "enables a user to maintain biomechanical alignment of the user's wrist and forearm during performance of the exercise, while maintaining a consistent resistance applied to the muscles, in the stability of an exercise machine." '261 application, at 3. The location of those handles relative to the other components is one of their structural attributes that enables performance of the rowing motion against the selected re-

sistance. '261 application, at 4 ("The declining, substantially linear path [of the pulled handles] enables the user to maintain proper biomechanical alignment of the force angle being applied to the grip. This allows for a fairly consistent torque application at the shoulder throughout the range of motion of the exercise."). Consequently, the relevant question before the Board was whether the apparatus described in the '447 patent was "'made to,' 'designed to,' or 'configured to,'" allow the user to perform a rowing exercise by pulling on the handles as claimed in the '261 application.

There is no question that the '447 patent does not have handles that are adapted to be pulled in a rowing motion. The '447 patent's written description describes the exercise machine's structure as allowing a movement that "simulates as natural a human musculoskeletal outward pushing motion as possible while maintaining proper biomechanical alignment of the user's joints." '447 patent col. 11 ll. 61–64; *see also id.* col. 2 ll. 37–41 (stating that the position of the machine and handles allows the exercising user to "maintain the proper biomechanical alignment of the joints" and "the proper alignment of the wrists"). The Board stated that using the '447 patent as a rowing machine was a new intended use of the prior art apparatus. Board Decision at 4. In the context of the claimed rowing machine, however, the mere *capability* of pulling the handles is not the inquiry that the Board should have made; it should have determined whether it would have been obvious to modify the prior art apparatus to arrive at the claimed rowing machine. Because the Board determined that the machine claimed in the '261 application would have been obvious by merely showing that a rowing exercise *could* be performed on the machine disclosed in the '447 patent, and not whether it was obvious to modify the chest press machine to contain handles "adapted to" perform the rowing motion by pulling on them, the Board erred in concluding that the

examiner had met his initial burden of establishing a case of prima facie obviousness. *In re Sullivan*, 498 F.3d at 1351.

Physical capability alone does not render obvious that which is contraindicated. And, on this record, it is not obvious to modify a machine with handles designed to be pushed to one with handles adapted to be pulled. A chest press machine is not a rowing machine, nor has evidence been shown that it is. In fact, anyone who has used exercise machines knows that a sure-fire way to cause injury is to use a machine in a manner not intended by the manufacturer.

Because the Board's analysis began with the premise that "adapted to" meant "capable of," its affirmance of the examiner's rejection also contained no explanation why or how a person having ordinary skill in the art would modify the prior art chest press machine to arrive at the apparatus of the '261 application. And because the initial burden was not met, Giannelli was not obligated to submit additional evidence to rebut the examiner's findings of pulling capability. *See In re Rijckaert*, 9 F.3d 1531, 1532 (Fed. Cir. 1993) ("Only if that burden [of establishing a prima facie case] is met, does the burden of coming forward with evidence or argument shift to the applicant."). The Board thus erred in affirming the conclusion of the examiner that the '447 patent apparatus rendered obvious the claimed invention of the '261 application.

As indicated earlier, the Board did not review the examiner's anticipation rejection, so neither will we. However, as we are reversing the Board's obviousness conclusion, it is hard to see how these claims could have been anticipated by the cited '447 patent.

Finally, we do not need to address the distinction between the "substantially linear" path claimed in the '261 application and the "slightly curvilinear" path disclosed in the '447 patent. At oral argument, counsel for Giannelli

conceded that the two phrases are not inconsistent. Oral Argument at 2:50, *In re Giannelli*, No. 2013-1167, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/13-1167/all.

CONCLUSION

For the foregoing reasons, the decision of the Board affirming the final rejection of the '261 application's claims 1–25 is reversed.

**REVERSED**