NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: STEPHEN O. LEMAY, MICHAEL MATAS, TIMOTHY P. OMERNICK, RICHARD WILLIAMSON, IMRAN CHAUDHRI, CHARLES J. PISULA, MARCEL VAN OS,**

*Appellants*

---

2015-1973

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 11/968,067.

---

Decided:  September 19, 2016

---

MARK S. DAVIES, Orrick, Herrington & Sutcliffe LLP, Washington, DC, argued for appellants.  Also represented by E. JOSHUA ROSENKRANZ, MARC SHAPIRO, SARAH M. STERNLIEB, New York, NY; DONALD E. DAYBELL, Irvine, CA; CATHY C. SHYONG, Menlo Park, CA; BRIAN B. HO, PETER J. YIM, Morrison & Foerster LLP, San Francisco, CA.

PHILIP J. WARRICK, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee.  Also represented by THOMAS W. KRAUSE, BRIAN RACILLA.

---

Before NEWMAN, MOORE, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Dissenting opinion filed by *Circuit Judge* MOORE.

WALLACH, *Circuit Judge.*

Appellants Stephen O. Lemay and others (collectively, "Lemay" or "Appellants"), inventors at Apple Inc.,[1] appeal the Final Written Decision of the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"), which affirmed in part an examiner's rejection of all claims of U.S. Patent Application Publication No. 2008/0320391 (the "Lemay application"). We reverse.

## BACKGROUND

Appellants are the named inventors of the Lemay application, which is generally directed to a method of streaming online videos to a portable device. The application contains six independent claims (1, 2, 29, and 31–33) that each recite, among other things, a touch screen and a graphical user interface that displays "a first list of information about online video items." *See, e.g.*, J.A. 985 (claim 1). Representative[2] claim 1 recites:

---

[1]    Apple Inc. is the real party in interest.

[2]    As will be explained more fully below, a claim is considered representative when the arguments presented in support of that claim before the PTAB apply to other claims grouped with the representative claim, and all claims argued with a representative claim rise and fall based on the representative claim. *See* 37 C.F.R. § 41.37(c)(1)(iv) (2012) ("For each ground of rejection applying to two or more claims, the claims may be argued . . . as a group (*all claims subject to the ground of rejection rise and fall together*) . . . ." (emphasis added)).

A method, comprising:

at a portable electronic device with a touch screen display:

displaying, on the *touch screen display* of the portable electronic device, a *first list of information about online video items* in a *plurality of lists* of information about online video items;

displaying, on the touch screen display of the portable electronic device, a *plurality of icons* corresponding to at least some of the plurality of lists of information about online video items;

in response to detecting a *moving finger gesture* on the first list of information about online video items, scrolling the first list of information about online video items on the touch screen display of the portable electronic device;

in response to detecting a *tap gesture* on a *first portion of a row* in the first list of information about online video items, wherein the row contains information about a particular online video item:

initiating a request for the particular online video item from a remote computer, receiving the particular online video item, and playing the particular online video item;

in response to detecting a finger gesture on a *second portion of the row* in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, displaying, on the touch screen display of the portable electronic device, *additional information* about the particular online video item; and

in response to detecting a *finger gesture on a respective icon* in the plurality of icons, displaying, on the touch screen display of the portable electronic device, *a corresponding list of information* about online video items.

J.A. 15–16 (emphases added).[3]

A USPTO examiner rejected claims 1–33 as obvious over various combinations of U.S. Patent No. 7,739,271 ("Cook") and U.S. Patent Application Publication No. 2007/0024646 ("Saarinen").[4]   The PTAB affirmed the rejections of claims 1–9 and 12–33, but reversed the rejections of claims 10–11.   Lemay appeals the PTAB's decision as to claims 1–9 and 12–33.   This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A) (2012).

---

[3]   Since filing the Lemay application in December 2008, claims 1–33 have been amended on multiple occasions.   *See* J.A. 11–14 (PTAB Docket Sheet listing the parties' filings, including those related to amendments), 500, 510–11 (Lemay's comments regarding amendments). For ease of reference, the court refers to the amended claims as argued before the PTAB.   *See* J.A. 15–23 (Appendix providing amended claims that "will replace all prior versions, and listings, of claims in the application").

[4]   The USPTO also referenced U.S. Patent Application Publication Nos. 2007/0229465 ("Sakai") and 2007/0064619 ("Bettis") as prior art, but Sakai and Bettis are not central to this appeal.

DISCUSSION

## I. Standard of Review and Legal Standard for Obviousness

The USPTO may not issue a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the [relevant] art . . . ." 35 U.S.C. § 103(a) (2006).[5] "The [USPTO] bears the initial burden of showing a prima facie case of obviousness." *In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014) (citation omitted). The ultimate determination of obviousness is a question of law, but that determination is based on underlying factual findings. *See In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The underlying factual findings include (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) the presence of secondary considerations of nonobviousness, such as "commercial success, long felt but unsolved needs, [and] failure of others." *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966). If "a prima facie case of obviousness is made, the burden then shifts to the applicant to come forward with evidence and/or argument supporting patentability." *Gianelli*, 739 F.3d at 1379 (citation omitted).

We review the PTAB's factual determinations for substantial evidence and its legal determinations de novo.

---

[5]   Congress amended § 103 when it enacted the Leahy–Smith America Invents Act ("AIA"). Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287 (2011). However, because the Lemay application was filed before March 16, 2013, the pre-AIA § 103 applies. *See id.* § 3(n)(1), 125 Stat. at 293.

*Gartside*, 203 F.3d at 1316. "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (citation omitted). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

## II. No Substantial Evidence Supports the PTAB's Determination that Cook and Saarinen Teach the Subject Elements of Claim 1

The PTAB found that certain elements of claim 1 of the Lemay application would have been obvious over Cook and Saarinen. *See* J.A. 5–6. When no substantial evidence supports the PTAB's findings, we may reverse its findings without remanding the matter. *See, e.g., Arendi S.A.R.L. v. Apple Inc.*, No. 2015-2073, 2016 WL 4205964, at *9 (Fed. Cir. Aug. 10, 2016) (reversing the PTAB's determination that adding a search for phone numbers to a text recognition program would have been obvious because the PTAB's decision was "conclusory and unsupported by substantial evidence"); *Giannelli*, 739 F.3d at 1380 (reversing affirmance of examiner's rejection where the PTAB's analysis "contained no explanation why or how a person having ordinary skill in the art would modify" the prior art to arrive at the claimed invention). The instant appeal warrants reversal.

Lemay argues that no evidence demonstrates that Cook and Saarinen teach the three disputed elements of claim 1. Although the USPTO attempts to identify record evidence in support of the PTAB's findings,[6] its argu-

---

[6]    In its Final Written Decision, the PTAB adopted the examiner's findings as to claim 1, *see* J.A. 6–7 ("We find that the evidence of record supports the [e]xaminer's

ments are unpersuasive. We agree with Lemay that no substantial evidence supports the PTAB's findings as to two of these three elements in claim 1, but we find that Lemay waived its arguments as to the third. We discuss each in turn.

### A. No Substantial Evidence Supports the PTAB's Finding that Cook and Saarinen Teach an Icon and "A Corresponding List of Information"

First, Lemay asserts that Cook does not teach the element recited in the final clause of claim 1, which requires that "in response to detecting a *finger gesture on a respective icon* in the plurality of icons, displaying, on the touch screen display of the portable electronic device, *a corresponding list of information* about online video items." J.A. 16 (emphases added). Lemay explains that this clause can be understood by reference to Figure 5A of the Lemay application, which is reproduced below:

finding th[at] Saarinen's touch screen and finger gestures (*see, e.g.*, Saarinen ¶¶ 37, 43), combined with Cook's icons and plurality of lists of information (*see* [J.A. 867 (Cook fig.3B)]), renders obvious the disputed [elements] of claim 1."), and the USPTO has overstated the examiner's findings in its brief. Although we refer to the USPTO's supporting arguments, we review the examiner's findings as adopted by the PTAB.



Figure 5A

J.A. 959 (Lemay application fig.5A).  Figure 5A illustrates a touch screen display that allows users to click on the bottom row of icons to generate a list of "featured," "most viewed," or "bookmark[ed]" video titles.  J.A. 959.

According to Lemay, those categories (i.e., "featured," "most viewed," "bookmark[ed]," etc.) represent the "plurality of icons" recited in claim 1 of the Lemay application. J.A. 16.  For example, when a user taps a finger on the "most viewed" category, the screen will display "a list of 'most viewed' video titles along with other information about each online video item."  Appellants' Br. 23.  The resulting list of video items can be seen in Figure 5A as "Pokemon theme music," "SNL—Digital Short," etc.  *See* J.A. 959 (Lemay application fig.5A).  The tapping of the user's finger and the resulting display of video titles and associated information illustrate, according to Lemay, the two elements of (1) "a finger gesture on a respective icon

in the plurality of icons" and (2) "a corresponding list of information about online video items," respectively. J.A. 16, 959.

The USPTO argues that substantial evidence supports the PTAB's finding that Cook teaches these elements (in combination with Saarinen, which teaches a touch screen and finger gestures). The PTAB adopted the examiner's finding that Cook teaches user queries entered into an Internet search engine, J.A. 671, which generates "a listing of album covers and links to listen to a music sample from three different albums," J.A. 874. In support, the USPTO contends that a user may click any of Cook's "Listen!" icons (i.e., "links to listen," J.A. 874), which it says correspond to Lemay application claim 1's "plurality of icons." Upon clicking one of these icons (i.e., "a finger gesture on a respective icon in the plurality of icons," J.A. 959), a media player appears that "displays various lists of information corresponding to the selected media sample" (i.e., "a corresponding list of information," J.A. 959). Appellee's Br. 25–26; *see* J.A. 671–72, 676 (examiner's findings that the media samples are "a corresponding list of information"). According to the USPTO, the "list of information about online video items" corresponds to the icon clicked by the user and comprises the album "tracks," along with other information. *See* Appellee's Br. 26; *see also* J.A. 672 (examiner's finding that songs can be "video items").

The USPTO's reasoning is flawed. The final clause of claim 1 in the Lemay application recites "in response to detecting a finger contact on a respective icon in *the* plurality of icons, displaying . . . a *corresponding list of information* about online video items." J.A. 16 (emphases added). The claim earlier provides the antecedent basis for "*the* plurality of icons" and their corresponding lists of information when it recites (1) "displaying . . . a first list of information about online video items in *a plurality of lists* of information about online video items" and

(2) "displaying . . . *a plurality of icons corresponding to at least some of the plurality of lists* of information about online video items." J.A. 15 (emphases added). The USPTO argues that

> each of the three album covers and "Listen!" links represent icons, and each *list of information* about the online media sample—album title (*e.g.*[,] "I Wanna Be With You"), artist name (*e.g.*, "Mandy Moore"), release date (*e.g.*, "May 9, 2000"), and price (*e.g.*, "$12.99")—*corresponds* to those icons.

Appellee's Br. 22 (emphases added). However, if the "list of information" corresponding to an icon is represented by album titles, artist names, and release dates generated as the results of the search query, the same list cannot also be represented elsewhere as a list of track titles. These are different lists.

For these reasons, we conclude that no substantial evidence supports the PTAB's finding that Cook, in combination with Saarinen, discloses clicking an icon to produce the recited "corresponding" list of information.

## B. No Substantial Evidence Supports the PTAB's Finding that Cook and Saarinen Teach a "First List of Information About Online Video Items"

The first clause of claim 1 recites "displaying . . . a first list of information about online video items in a plurality of lists of information about online video *items*." J.A. 15 (emphasis added). Lemay asserts that the use of the word "items" indicates that "the first list of information must be about *multiple* online video items." Appellants' Br. 25. The USPTO states that Lemay's argument "misses the mark" because the "sample(s)" illustrated in Cook Figure 3B are the "items" referred to in claim 1, and the "list of information" corresponding to these items is the list of search results illustrated in Figure 3B. Appellee's Br. 32 (emphasis omitted).

The USPTO's position regarding "items" contradicts its position regarding "lists of information." Earlier in its brief, the USPTO contends that each of the three sets of title, artist, and price information identified in Cook Figure 3B is one of the "lists of information." *See, e.g.*, Appellee's Br. 22–23 (where the USPTO "borrow[s] the annotations from [Lemay's] brief," but omits the rectangular annotation boxes surrounding the names of the "items"). Comparing Lemay's brief to the USPTO's reveals this discrepancy:



*Compare* Appellants' Br. 20 (left, reproducing and annotating a portion of J.A. 867 (Cook fig.3B)), *with* Appellee's Br. 23 (right, reproducing and annotating a portion of J.A. 867 (Cook fig.3B)). As can be seen from these illustrations, Lemay's annotated version of Cook Figure 3B contains rectangles around "Mandy More," "I Wanna Be With You," and "Now That's What I Call Music! 4," i.e., around the "items" referred to in the claim. Appellants'

Br. 20. In contrast, the USPTO's version omits these rectangles, noting that "the green boxes [i.e., the larger rectangles surrounding the title, artist, and price information] indicate the 'plurality of lists of information.'" Appellee's Br. 23. According to the USPTO, each of the three sets of title, artist, and price information is one of the "lists of information." *Id.* at 22–23. The USPTO confirms this understanding when it states that "Cook . . . explains that the results display includes a *listing* of information that correlates to *each* album cover: the price of the album and 'other purchasing information.'" *Id.* at 24 (emphases added) (quoting J.A. 874).

The USPTO's reasoning is internally inconsistent. If each of the three sets of title, artist, and price information constitutes one of the "lists of information," it cannot also be correct that the search results as a whole (i.e., "Mandy More," "I Wanna Be With You," and "Now That's What I Call Music! 4") constitute one of the lists. And, if each of the three sets of title, artist, and price information constitutes one of the lists of information, then each such list corresponds only to a single item (i.e., the "particular online video item," J.A. 15, that is played when a user clicks the "Listen!" link), rather than multiple "online video items." J.A. 15 (emphasis added).

For these reasons, the court concludes that no substantial evidence supports the PTAB's conclusion that Cook Figure 3B discloses "displaying . . . a first list of information about online video *items* in a plurality of lists of information about online video items." J.A. 15 (emphasis added).

C. Lemay Waived its Arguments as to Dual Functionality

Although the term "dual functionality" does not appear anywhere in the Lemay application, claim 1 recites the following two steps:

[(1)] in response to detecting a *tap gesture* on a *first portion of a row* in the first list of information about online video items, wherein the row contains information about a particular online video item:

. . .

playing the particular online video item;

[(2)] in response to detecting a finger gesture on a *second portion of the row* in the first list of information about online video items, wherein the second portion of the row is different from the first portion of the row, displaying, on the touch screen display of the portable electronic device, *additional information* about the particular online video item . . . .

J.A. 15 (emphases added). Lemay contends that these limitations establish the dual functionality element, which is illustrated in Figure 5A of the Lemay application. Appellants' Br. 28 (reproducing and annotating a portion of J.A. 959 (Lemay application fig.5A)).

However, the court need not address these arguments. Because Lemay did not raise this issue before the PTAB, the PTAB did not make any findings on this issue. The court cannot decide questions of fact in the first instance when reviewing the PTAB's decisions. Therefore, Lemay's arguments as to claim 1 are waived. *See, e.g., In re Suitco Surface, Inc.*, 603 F.3d 1255, 1261 (Fed. Cir. 2010) (declining to consider new anticipation argument not raised before the PTAB); *In re Watts*, 354 F.3d 1362, 1367–68 (Fed. Cir. 2004) (holding patent holder waived new argument on the scope of the prior art never raised to the PTAB). Therefore, the court need not consider whether Cook discloses the dual functionality element of claim 1 of the Lemay application.

III. No Substantial Evidence Supports the PTAB's Obviousness Determination as to Claims 2–3, 5–8, 12–22, and 24–33

As to claims 2–3, 5–8, 12–22, and 24–33,[7] claim 1 is representative. A claim is considered representative when it is not separately argued before the PTAB, *see* 37 C.F.R. § 41.37(c)(1)(iv) ("For each ground of rejection applying to two or more claims, the claims may be argued . . . as a group (*all claims subject to the ground of rejection rise and fall together*) . . . ." (emphasis added)), and claims that "are not separately argued . . . all stand or fall together," *In re Kaslow*, 707 F.2d 1366, 1376 (Fed. Cir. 1983).

In their opening brief before the PTAB, Lemay grouped claims 2–3, 5–8, 12–22, and 24–33 together and presented arguments applicable to this group. *See* J.A. 711–20 (Appellants' Brief to the PTAB); *see also* J.A. 760–67 (Appellants' Reply Brief to the PTAB grouping claims in the same manner, with the exception of including claim 4 in the sections on claims 1–3, 5–8, 12–22, and 24–33). As a result, the PTAB determined that "Appellants have not presented separate patentability arguments for pending claims 2–3, 5–8, 12–22, and 24–33 or have reiterated substantially the same patentability arguments as those previously discussed for claim 1," and thus sustained the examiner's rejection of these claims on the same grounds as claim 1. J.A. 7 (citing 37 C.F.R. § 41.37(c)(1)(iv)).

In the present appeal, the parties continue to agree that claim 1 is representative. *See* Appellants' Br. 7 n.6 ("Because the parties and the PTAB treated claim 1 as a representative claim, this brief does so as well."); Appel-

---

[7]    Because the PTAB reversed the examiner's rejections of claims 10 and 11, they are not at issue in this appeal. *See generally* Appellants' Br. 41–56.

lee's Br. 1, 3, 5, 18–19, 21, 40 (repeatedly referring to "representative claim 1"). Therefore, claims 2–3, 5–8, 12–22, and 24–33 stand or fall with claim 1. *See* 37 C.F.R. § 41.37(c)(1)(iv); *Kaslow*, 707 F.2d at 1376. Because claim 1 would not have been obvious, we reverse as to claims 2–3, 5–8, 12–22, and 24–33 as well.

### IV. No Substantial Evidence Supports the PTAB's Obviousness Determinations as to Dependent Claims 4, 9, and 23

Lemay provided separate arguments for dependent claims 4, 9, and 23 before the PTAB, *see* J.A. 720–22 (claims 4 and 9), 768–71 (claim 9), 773–74 (claim 23), and the PTAB provided separate reasoning for its affirmance of the examiner's rejection of these claims, *see* J.A. 7–9. Before this court, Lemay continues to separately argue these claims. *See* Appellants' Br. 48–54. However, the court need not address these separate arguments because these claims depend from nonobvious claims.

It is true that dependent claims may either stand or fall when the associated independent claim is invalidated as obvious. *See* 35 U.S.C. § 282(a) ("[D]ependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."); *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1383 (Fed. Cir. 2008) (noting the "black letter law that a finding of invalidity of an independent claim does not determine the validity of claims that depend from it" (citation omitted)). But this does not mean that dependent claims that are not themselves inherently nonobvious may either stand or fall when, as here, the associated independent claim is determined to be *nonobvious*. To the contrary, "dependent claims are nonobvious if the independent claims from which they depend are nonobvious . . . ." *In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992); *see Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008) ("[I]f claim 1 is not

obvious then claims 6–8 also cannot be obvious because they all depend from a nonobvious claim." (citation omitted)); *In re Fine*, 837 F.2d 1071, 1076 (Fed. Cir. 1988) ("Dependent claims are nonobvious under section 103 if the independent claim from which they depend are nonobvious." (citations omitted)); Manual of Patent Examining Procedure § 2143.03 (9th ed. Rev. 7, Nov. 2015) ("If an independent claim is nonobvious under 35 U.S.C. [§] 103, then any claim depending therefrom is nonobvious." (citation omitted)).

Claims 4, 9, and 23 depend from claims that this court determined to be nonobvious, i.e., claims 2 and 3. *See* J.A. 17 (where claims 4 and 9 depend from "[t]he method of claim 2"), 19 (where claim 23 depends from "[t]he method of claim 3"). Therefore, claims 4, 9, and 23 also are nonobvious. *See Ortho-McNeil*, 520 F.3d at 1365.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For these reasons, the decision of the United States Patent and Trademark Office's Patent Trial and Appeal Board is

**REVERSED**

# United States Court of Appeals for the Federal Circuit

---

**IN RE: STEPHEN O. LEMAY, MICHAEL MATAS, TIMOTHY P. OMERNICK, RICHARD WILLIAMSON, IMRAN CHAUDHRI, CHARLES J. PISULA, MARCEL VAN OS,**

*Appellants*

---

2015-1973

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 11/968,067.

---

MOORE, *Circuit Judge*, dissenting.

The majority holds that the Patent Trial and Appeal Board's ("Board") findings regarding the scope and content of the prior art are not supported by substantial evidence and reverses the Board's obviousness determination as to every disputed claim. I would affirm the Board's rejection of claims 1–8 and 12–33, but would reverse on claim 9.

## I. Claim 1

Respectfully, substantial evidence supports the Board's finding that Cook and Saarinen disclose the disputed limitations of claim 1.

The majority opinion concludes that there is not substantial evidence to support the Board's finding that Cook discloses an "icon" and "a corresponding list of information." *See* Majority Op. at 6–10. This implicates two of the three limitations disputed by Lemay:

> displaying, on the touch screen display of the portable electronic device, *a plurality of icons corresponding to at least some of the plurality of lists of information* about online video items;
>
> . . .
>
> in response to detecting a *finger gesture on a respective icon in the plurality of icons*, displaying, on the touch screen display of the portable electronic device, *a corresponding list of information* about online video items.

J.A. 15–16 (emphases added).

For the first limitation, "a plurality of icons corresponding to at least some of the plurality of lists of information," the examiner cited Cook's disclosure at column 6 lines 33–39, which describes a search result display depicted in Figure 3B of Cook. J.A. 626. For the second limitation, displaying "a corresponding list of information" after detecting "a finger gesture on a respective icon in the plurality of icons," the examiner cited a different portion of Cook at column 8 lines 37–49, which describes the branded player depicted in Figure 5 of Cook. J.A. 627.

The majority states, and I agree, that "a plurality of icons" recited in the first limitation provides antecedent basis for and thus must be the same as "the plurality of icons" recited in the second limitation. Majority Op. at 9–10. And I do not read the PTO's brief to dispute this issue. What the PTO does argue is that the first limitation's "plurality of lists of information" does not provide antecedent basis for "a corresponding list of information." Appellee's Br. 29–30. I agree and therefore cannot join

the majority's opinion holding that the Board's findings are not supported by substantial evidence because the Board relies on "different lists" disclosed in Cook to satisfy each limitation. *See* Majority Op. at 10.

The first limitation recites "at least some of the plurality of lists of information about online video items." The second limitation recites "a corresponding list of information about online video items." I cannot agree with the majority that these must be the same lists of information for three reasons. First, there is no antecedent basis to support limiting "a corresponding list" to one of the "plurality of lists." Second, the limitations themselves use different words to describe the two different lists of information. *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) (holding there is a presumption that when different words are used to describe different elements they have different meanings). That both limitations refer to lists of information "about online video items" does not mean the limitations are referring to the same lists. Finally, during prosecution, the PTO gives terms their broadest reasonable construction. Viewing these terms under the broadest reasonable interpretation, I cannot say that "a corresponding list" must be identical to "the plurality of lists."

In short, the claim's "plurality of lists of information about online video items" is a different element from the same claim's "a corresponding list of information about online video items." The majority errs when it requires them to be "the same list." Majority Op. at 10. Understanding claim 1 in this way, I would hold there is substantial evidence to support the examiner's finding, adopted by the Board, that these limitations are disclosed in Cook. *See* J.A. 626–27.

For similar reasons, I would also hold that substantial evidence supports the Board's finding that the third

limitation, "a first list of information about online video items in a plurality of lists of information about online video items," is disclosed in Cook. Under the broadest reasonable interpretation, I think the majority is again mistaken in requiring that "a first list of information" look the same as "a plurality of lists of information."

## II.     Claim 9

While I disagree with the majority regarding claim 1, which is representative of claims 2–8 and 12–33, I would not affirm the Board on claim 9. Claim 9 recites "a configuration icon that when activated initiates the display of a user interface for configuring which icons . . . are displayed with the first list of information." J.A. 17. In its rejection, the examiner cited Cook at column 8 lines 37–60, which describes Cook's branded player depicted in Figure 5 and a "call-to-action" function. J.A. 629. The Board adopted the examiner's finding that "Cook describes editing operations for a playlist, as well as a function with an interface that directs the user to take actions." J.A. 8. The portion of Cook disclosing customizing *playlists* does not involve customizing or configuring the display of *icons* in any way. *See* J.A. 875 (Cook at 8:37–49). Even if the "call-to-action" function could be interpreted to reconfigure the display of media product icons, as the PTO argues, Appellee's Br. 54–55, this function occurs within the branded player, apart from the "icons . . . displayed with the first list of information." *See* J.A. 869 (Cook at Fig. 5); 875 (Cook at 8:50–60). Because the Board's finding that Cook discloses claim 9's "a configuration *icon* that when activated initiates the display of a user interface for configuring [] *icons*" is not supported by substantial evidence, I would reverse the Board's decision that claim 9 would have been obvious over Cook.